Gerard N. HAAS, Jr., Plaintiff–
Appellant,

v.

State of WISCONSIN, Supreme Court
of Wisconsin, Racine County, et
al., Defendants–Appellees.

No. 03–1450.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 2003.

Decided Aug. 5, 2004.

Robert G. Bernhoft, Milwaukee, WI, for
Plaintiff-Appellant.

David C. Rice, Madison, WI, Raymond
J. Pollen, Crivello, Carlson,Mentkowski &
Steeves, Milwaukee, WI, Ryan G. Braithe-
waite, W. Scott Lewis, Racine, WI, for
Defendants-Appellees.

Before RIPPLE, MANION, and
DIANE P. WOOD, Circuit Judges.

## ORDER

On February 22, 2002, Gerard N. Haas, Jr. filed an action under 42 U.S.C. § 1983 against various Wisconsin governmental entities and individuals associated with those entities. The district court held that it was without subject matter jurisdiction pursuant to the *Rooker–Feldman* doctrine, that the defendants were entitled to immunity and that Mr. Haas could not state a claim on the merits. Mr. Haas timely appealed. For the reasons set forth in the following order, we affirm the judgment of the district court.

## I

## BACKGROUND

On May 12, 1998, Mr. Haas was stopped by Racine police officers. Later that day, he went to discuss the encounter with Racine Police Chief Richard Polzin and Detective Ray Knapp. During that meeting, Mr. Haas was informed that he would be held under the authority of three municipal commitments. He was not released until his brother posted $603.90 for the previously imposed unpaid forfeitures that gave rise to the commitments.

Mr. Haas was served with at least seven other municipal citations between August 5, 1997, and September 26, 1998. He did nothing in response to the citations; he did not appear in municipal court nor tender any deposits. Accordingly, Racine Municipal Judge Robert Michelson entered default judgments against Mr. Haas and imposed forfeiture debt judgments. Subsequently, Judge Michelson issued "warrants" or "commitments" that stated: "Contempt of Court—Commitment Upon Sentence." These commitments ordered Mr. Haas to pay $3,110.10 or spend ninety-one days in jail "at hard labor." On February 10, 2000, Mr. Haas was taken to the Racine County Jail under the authority of the previously described commitments by Racine police officers.

We know from *State ex rel. Haas v. McReynolds*, 252 Wis.2d 133, 643 N.W.2d 771 (Wis.2002), that, on February 11, 2000 (the day after he was arrested), Mr. Haas filed a writ of habeas corpus in the Racine County Circuit Court; he claimed that the municipal court lacked subject matter jurisdiction. *Id.* at 773. The notion that the municipal court lacked jurisdiction over Mr. Haas also underlies one of his two key contentions in this court: that the municipal court could not take jurisdiction over Mr. Haas on the basis of a citation alone, despite the fact that Wisconsin law appears to contemplate that very process. *See* Wis. Stat. §§ 800.01(1), 800.01(2), 800.01(3), 800.04(2m). On June 29, 2000, the Racine County Circuit Court held: "(1) there was legal cause for Haas's imprisonment; (2) the Racine Municipal Court acted within its jurisdiction; (3) Haas's due process rights were not violated; (4) there was no reasonable basis for Haas's habeas corpus petition; and (5) the petition was frivolous." *McReynolds*, 643 N.W.2d at 774. Mr. Haas originally decided to appeal the denial of his first petition; then he voluntarily dismissed his appeal.

Mr. Haas then filed a second habeas petition, which Wisconsin's appellate court dismissed on February 12, 2001. *Id.* He petitioned the Wisconsin Supreme Court for review, and, on September 21, 2001, the Wisconsin Supreme Court granted his petition and agreed to hear his claim.

While review was pending before the Supreme Court of Wisconsin, in January 30, 2002, Mr. Haas again was stopped while driving his car. He was taken into custody under the authority of two municipal commitments for failure to pay forfeiture debts totaling $2,536. He was confined in the Racine County Jail but released after his brother posted a bond for the forfeitures owed.

About a month later, on February 22, 2002, Mr. Haas filed an action under 42 U.S.C. § 1983 against various city, county and state defendants.[1] His complaint sought compensatory and punitive damages and injunctive and declaratory relief. Mr. Haas alleged that the defendants had violated a number of his federal constitutional rights; he also asserted a number of state law claims. Only two of his claims are relevant to this appeal.[2] First, he claimed that the municipal court operated without "jurisdiction" over him because, as a matter of Wisconsin law, issuance of a citation does not commence an action, and the municipal court operated on the basis of a citation alone. By proceeding on this basis, Mr. Haas claims, the municipal court "violated his fundamental 14th Amendment right not to be deprived of liberty or property without due process of law." Appellant's Br. at 6.[3] Second, Mr. Haas claimed that the municipal court's decision to order him imprisoned "at hard labor" for failure to pay his debts "violated the 13th Amendment's prohibition against involuntary servitude[,] peonage abolished by 42 U.S.C. § 1994," and Article I, Section 16 of the Wisconsin Constitution. *Id.* at 9.

Meanwhile, on April 30, 2002, the Wisconsin Supreme Court affirmed the dismissal of Mr. Haas' second habeas petition. It held that, "[b]ecause Haas could have sought (and in fact started to seek) a direct appeal of the first habeas corpus petition to address the same issues he now raises, he was not entitled to a separate writ." *McReynolds,* 643 N.W.2d at 774. It noted that, given this holding, it did not have to address "whether the municipal court had jurisdiction to issue the commitments." *Id.*

In the federal proceeding on November 20, 2002, the district court dismissed the claims against Wisconsin and the Office of Judicial Education, as well as claims against the state officials in their official capacities for damages, based on Eleventh Amendment immunity. *See* R.50. In addition, Mr. Haas withdrew many of his federal constitutional claims. *Id.* On January 16, 2003, the district court dismissed Mr. Haas' remaining claims and entered judgment against Mr. Haas. Specifically, the district court held: (1) that the *Rooker–Feldman* doctrine applied and rendered it without subject matter jurisdiction, (2) that the defendants were entitled to immunity and (3) that Mr. Haas failed to state a claim. Mr. Haas timely appealed.

## II

### DISCUSSION

#### A.

█ The district court held that it was without subject matter jurisdiction to hear

---

1. In brief, the "city defendants" are Municipal Judge Robert Michelson, and the city entities and employees that executed Judge Michelson's orders by, for example, putting him under arrest. The "county defendants" are the entities and individuals responsible for detaining Mr. Haas after he was arrested. The "state defendants" are the State of Wisconsin, the Supreme Court of Wisconsin Office of Judicial Education and individuals involved in that office. *See* R.1 at 2–4.

2. Because Mr. Haas has not addressed any of his other claims in his opening brief, they are waived. *See Hentosh v. Herman M. Finch*

*Univ. of Health Scis./The Chicago Med. Sch.,* 167 F.3d 1170, 1173 (7th Cir.1999).

3. At least as expressed in his briefs, Mr. Haas' Fourteenth Amendment argument is that *Wisconsin law* required more than a mere citation to obtain "jurisdiction" (and operating without jurisdiction violated his due process rights); it is not that the Due Process Clause *itself* requires more than a mere citation. Any argument as to the latter is waived, *see Hentosh,* 167 F.3d at 1173, and, even if it were alive, it would not change our holding.

Mr. Haas' collateral attack under the *Rooker–Feldman* doctrine. We review this decision de novo. *See Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir.2002). "Simply put, the *Rooker [v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)]–[District of Columbia Court of Appeals v.] Feldman* [460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)] doctrine 'precludes lower federal court jurisdiction over claims seeking review of state court judgments ... [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.' Thus, if a claim is barred by the *Rooker–Feldman* doctrine, a federal court lacks subject matter jurisdiction over the case." *Id.* (internal citations and footnote omitted). The *Rooker–Feldman* doctrine bars federal court review not only of a state court's "judgment" but also of claims that are "inextricably intertwined" with the state court judgment. *See id.* at 664–65. "[I]f the *injury* alleged resulted from the state court judgment itself," *Rooker–Feldman* bars review. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 555 (7th Cir.1999) (internal quotation marks and citation omitted) (emphasis added). In this case, because Mr. Haas' alleged injuries result directly from the state court judgments themselves, we are without jurisdiction. *See also GASH Assocs. v. Vill. of Rosemont,* 995 F.2d 726, 729–30 (7th Cir.1993) ("Just as in *Ritter [v. Ross,* 992 F.2d 750 (7th Cir.1993) ], [the plaintiff] has no claim independent of the state court's adverse decision. To put this differently, the injury of which GASH complains was caused *by* the judgment, just as in *Rooker, Feldman,* and *Ritter.*").

As the district court noted, this case is indistinguishable from *Homola v. McNamara,* 59 F.3d 647 (7th Cir.1995). In *Ho-*mola, the City of Edwardsville sought an injunction against Homola's building under an expired permit. Homola ignored the suit, and the state court entered a default judgment against him, directing him to apply for a new permit and to allow the City to do inspections. Homola refused; the state court therefore ordered him to be held in contempt of court and arrested. Accordingly, county authorities incarcerated him. After a night of thinking his situation over, he decided to comply with the default judgment. *Id.* at 648–49.

Undeterred, Homola then went to federal court, and, proceeding under § 1983, he brought an action against the City, its attorney, the state court judge and the individuals charged with executing the state court's order. Dismissing the action under the *Rooker–Feldman* doctrine, the court stated: "Homola has tried to shift not only courts but also jurisdictions, asking a federal judge to award relief for wrongs committed in state court. Instead of saying that there was no constitutional flaw in the state proceedings, the district court should have refused to entertain the claims, sending Homola back where he belongs—the original courts." *Id.* at 650. The court also noted that the case did not present an instance in which *Rooker–Feldman* was inapplicable because the federal plaintiff, Homola, did not have an opportunity to raise his claims in state court: "The order to hale Homola into court in the contempt proceedings, by contrast, was issued after an opportunity to be heard. Homola spurned that opportunity—that is why he had to be dragged into court—but one who turns his back on the original tribunal does not help himself to the opportunity to litigate elsewhere." *Id.* at 651.

Mr. Haas is similarly situated; like Homola, all of his alleged *injuries* flow from the state court judgment. Through the

guise of § 1983, he, in essence, asks us to "set aside" the default judgments (because the municipal court lacked jurisdiction, thus violating due process) and the subsequent imprisonment orders (because they violated the federal prohibition against involuntary servitude, constituted peonage and violated the Wisconsin Constitution) in order to remedy his injuries flowing therefrom. *See GASH Assocs.,* 995 F.2d at 728. Also, like Homola, Mr. Haas "spurned" his opportunities to be heard on these very matters in state court. Instead of completely ignoring the municipal court and its proceedings, Mr. Haas could have raised his claims there. *See* Wis. Stat. §§ 800.02(1), 800.04, 800.095, 800.115(2); *see also City of Milwaukee v. Wroten,* 160 Wis.2d 207, 466 N.W.2d 861, 867 (Wis. 1991) ("We hold that the municipal court has the authority to determine the constitutionality of an ordinance that is the basis of an action brought before it."); *City of Kenosha v. Jensen,* 184 Wis.2d 91, 516 N.W.2d 4, 7 (Wis.Ct.App.1994) ("We conclude that a municipal court has the inherent authority to vacate a void judgment irrespective of statutory requirements for reopening judgments."). If his claims were rebuffed, he then could have appealed to the circuit court. *See* Wis. Stat. § 800.14. Indeed, we know that Mr. Haas did raise the issue of the municipal court's "jurisdiction" in state court on his first habeas petition; he offers no reason why

he could not have raised his second argument—that the commitments were unconstitutional—there as well. Despite the fact that the state courts can and must apply the federal law that he asks this court to apply to trump his state judgments, *see* U.S. Const. art. VI, § 2 (Supremacy Clause), he has foregone the state court processes and come to us for collateral review. The whole point of *Rooker–Feldman* is to preclude our taking on that role.

Despite the district court's reliance upon *Homola,* Mr. Haas' briefs do not mention the case. Nor does he invite our attention to a case that is as nearly on point. Rather, he attempts to limit the applicability of *Rooker–Feldman* by suggesting that the relevant state court "judgment" for purposes of *Rooker–Feldman* analysis is the state court's underlying decision with respect to his "guilt or innocence regarding ordinance violations."[4] Appellant's Br. at 34. First, we point out, any attempt by Mr. Haas to relitigate the underlying issue of liability, although not barred by *Rooker–Feldman,* would be barred, in any event, by collateral estoppel.[5] More fundamentally, Mr. Haas' approach of challenging the initial decision to exercise jurisdiction over Mr. Haas and the subsequent remedial order, as opposed to Mr. Haas' guilt or innocence, does not change the fact that, at

---

4. Mr. Haas does not dispute his guilt.

5. As we have explained:
   *Homola v. McNamara,* 59 F.3d 647, 650 (7th Cir.1995), ... points out that the *Rooker–Feldman* doctrine, if it is to be kept distinct from res judicata (we remarked on the ease of confusing *Rooker–Feldman* with res judicata in *GASH Associates v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir. 1993)), ought to be confined to cases in which the defendant in the state court is seeking to undo a remedial order of some sort (ordinarily a criminal conviction or an injunction). That is unmistakably a collateral attack on the state court's judgment. When a plaintiff seeks to relitigate a suit that has been decided against him, he is not so much attacking as trying to bypass the judgment in that suit; and the doctrine that blocks him is res judicata. It blocks Nesses, who had previously sued the lawyers twice (but of course once would have been enough for res judicata to operate as a defense) for the same wrongdoing, and lost. *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir.1995).

bottom, Mr. Haas' civil rights claims seek invalidation of the municipal court action. If these book-end decisions are not relevant "judgment[s]" for purposes of *Rooker–Feldman,* they are at least "inextricably intertwined" with the "judgment" so that *Rooker–Feldman* is fully operative.

Mr. Haas' main contention to the contrary is that federal courts *always* have the ability to review state court judgments for jurisdictional competence, and *Rooker–Feldman* can be no exception.[6] However, controlling authority does not support his claim. In *Schmitt v. Schmitt,* 324 F.3d 484 (7th Cir.2003), this court held:

> Mr. Schmitt also argues that a rarely invoked "void *ab initio*" exception to the *Rooker–Feldman* doctrine applies here. According to Mr. Schmitt, the faulty service of process meant that the state courts never had jurisdiction over him. Federal courts exercising bankruptcy jurisdiction have occasionally reviewed state court judgments where the state court lacked personal or subject matter jurisdiction. *See, e.g., In re James,* 940 F.2d 46, 52 (3d Cir.1991). *But see In re Ferren,* 203 F.3d 559, 560 (8th Cir.2000) (declining to create exception). We have acknowledged the Third Circuit's exception, but we have not endorsed it. *4901 Corp. v. Town of Cicero,* 220 F.3d 522, 528 n. 6 (7th Cir.2000).
>
> While a void *ab initio Rooker–Feldman* exception might be appropriate in some bankruptcy cases (apparently the only situation in which it has been applied) in order to protect the dominant federal role in that specialized area of the law, it has no place here. As we have said, the Illinois state courts were

competent to determine their own jurisdictional boundaries, so there is no need for the federal courts to intervene. If a state court had violated constitutional jurisdictional limits, Mr. Schmitt could have brought that up with the Supreme Court after exhausting his state court remedies.

> In sum, Mr. Schmitt has brought the precise sort of claim *Rooker–Feldman* eliminates. . . .

*Id.* at 487.

Even assuming that *Schmitt* were not directly and precisely on point, which it is, Mr. Haas' argument, as he frames it, still would fail. He argues that "[c]ollateral attack of state court judgments or orders is *always* permitted when the collateral attack challenges the *subject matter jurisdiction* of the state court that issued the judgment or order." Appellant's Br. at 35 (emphasis added). Yet, Mr. Haas' challenge to the sufficiency of citations to bring him before the municipal court has absolutely nothing to do with *subject matter jurisdiction.* "Subject-matter jurisdiction defines the court's authority to hear a given *type* of case." *United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984) (emphasis added). A municipal court can hear cases regarding violations of municipal ordinances; Mr. Haas' argument, if it has any colorable jurisdictional basis, goes to the municipal court's personal jurisdiction. *See* Wis. Stat. § 800.01(1)(a) (providing that, "[i]n municipal court, personal jurisdiction in municipal ordinance violation cases" is obtained when, inter alia, the defendant "is served with a summons and complaint *or citation*" (emphasis added)).[7] Mr. Haas is

---

**6.** His argument that the municipal court was jurisdictionally incompetent is, of course, that the citation was insufficient as a matter of state law to bring him before the municipal court.

**7.** Mr. Haas also argues that "Haas's request for declaratory and injunctive relief precludes application of *Rooker–Feldman,*" Appellant's Br. at 34, but, in this circuit, *Rooker–Feldman* applies equally to claims for monetary dam-

attempting to bypass the state review processes and is asking the federal courts to review collaterally, to set aside and to remedy injuries flowing from a state court judgment. The district court correctly held that the *Rooker–Feldman* doctrine forbids it to undertake these tasks. *See GASH Assocs.*, 995 F.2d at 728.

### B.

What we have said so far requires affirmance of the district court's decision. We note, however, that the defendants also are entitled to immunity. Judges, such as Judge Michelson, are absolutely immune from suits for damages unless (1) the suit challenges an action that is not judicial in nature or (2) where the judge acted "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Mr. Haas vigorously asserts the latter exception, but that exception is only concerned with *subject matter jurisdiction*, *see, e.g., Homola*, 59 F.3d at 651, and even then, only when it is blatantly absent, *see, e.g., Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 524 (7th Cir.2001) ("[J]udicial officers are entitled to that immunity even when they act in error, maliciously, or in excess of their authority."). As we noted earlier, Mr.

Haas' challenge to the municipal court's jurisdiction—that no action commenced under Wisconsin law because Wisconsin law requires more than a citation—has nothing to do with subject matter jurisdiction. In addition, his reading of the Wisconsin statutes to support his "jurisdictional" argument is tortured; at best, Judge Michelson's failure to accept Mr. Haas' position (even assuming it had some relevance to subject matter jurisdiction) was a minor procedural error. *See Homola*, 59 F.3d at 651 ("The judge must be acting as a judge, rather than as an ombudsman or administrative official. Judge Stack had subject-matter jurisdiction and played a judicial role. That is sufficient for immunity." (internal citation omitted)). Additionally, the only injury that Mr. Haas has alleged the city defendants and county defendants inflicted on him was as a result of compliance with Judge Michelson's orders. Accordingly, these officers are entitled to quasi-judicial immunity; lest, as here, they are to become a "lightning rod for harassing litigation aimed at the court." *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir.2001) (internal quotation and citation omitted). This form of immunity assuredly disposes of Mr. Haas' damages claims against all of these defendants. *See Homola*, 59 F.3d at 651.

---

ages and prospective relief. *See Garry v. Geils*, 82 F.3d 1362, 1370 (7th Cir.1996); *Homola*, 59 F.3d at 651; *see also Keene Corp. v. Cass*, 908 F.2d 293, 297 (8th Cir.1990) (*Rooker–Feldman* doctrine applies to claims for injunctive and declaratory relief); *Blue Cross & Blue Shield of Maryland, Inc. v. Weiner*, 868 F.2d 1550, 1556 (11th Cir.1989) (*"Rooker–Feldman* bar applies to BCBS–Maryland's request for injunctive relief in addition to its request for declaratory relief."). He also appears to argue that some of the defendants' actions—specifically, the State of Wisconsin and its Office of Judicial Education that promulgated the Municipal Judge Benchbook (which incorporates the allegedly unlawful practices)—were too remote from the state

court judgment to thwart review under *Rooker–Feldman*. *See* Appellant's Br. at 34–35. However, the district court dismissed the claims against these defendants. *See* R.50 ("[C]laims against State of Wisconsin and Office of Judicial education dismissed."); R.51 at 2. Regardless, *all* of the injuries to *Mr. Haas* (of course, Mr. Haas cannot assert relief for the injuries of others) by *all defendants* ultimately stem from the state judgment. *See GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 729–30 (7th Cir.1993) ("Just as in *Ritter*, [the plaintiff] has no claim independent of the state court's adverse decision. To put this differently, the injury of which GASH complains was caused *by* the judgment, just as in *Rooker, Feldman,* and *Ritter.*").

Mr. Haas' claims for injunctive relief against Judge Michelson are also foreclosed. In 1996, Congress amended 42 U.S.C. § 1983 to state that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." This amendment was intended to overrule the Supreme Court's decision in *Pulliam v. Allen,* 466 U.S. 522, 541–43, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) (holding that judicial immunity is not a bar to demands for injunctive relief against state judges). *See Bolin v. Story,* 225 F.3d 1234, 1242 (11th Cir.2000) (per curiam) (discussing the amendment's purpose and explaining its effect).[8]

## C.

Finally, as an independent basis of affirmance, we note our agreement with the district court's analysis of the merits of the case. At bottom, Mr. Haas has presented no colorable constitutional issue.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

---

8. Nevertheless, Mr. Haas' opening brief cites and quotes *Pulliam* for the proposition that "judicial immunity does not bar claims for injunctive relief against state judges acting in their official capacities," Appellant's Br. at 29, without noting the 1996 amendments to 42 U.S.C. § 1983's language that overruled the case or explaining why the new language in § 1983 would not apply to his situation. In his reply brief, he claims that these "amendments carefully preserved injunctive relief against state court judges when 'such action was clearly in excess of such officer's

jurisdiction.'" Reply Br. at 13 (quoting *Kampfer v. Scullin,* 989 F.Supp. 194, 201 (N.D.N.Y.1997) (listing and explaining the amendments)). However, the "excess of such officer's jurisdiction" language is not in § 1983; it is now found in 42 U.S.C. § 1988, which involves attorney's fees.

Section 1983 still leaves room for claims for declaratory relief, which Mr. Haas has requested. However, as noted above, the *Rooker–Feldman* doctrine reaches all forms of relief Mr. Haas requests and disposes of his case.