*182 ¶ 140.
ANNETTE KINGSLAND ZIEGLER, J.
(concurring in part, dissenting in part). I agree only with the lead opinion's conclusion to affirm in part and reverse in part the court of appeals. The opinion of Justice Ann Walsh Bradley is joined only by Justice Shirley S. Abrahamson. Justice David T. Prosser concurs, but does not join Justice Ann Walsh Bradley's opinion.[1] While Justice Prosser engages in a thorough, reasonable, and persuasive analysis concerning Singh's ex post facto challenge, the facts of this case are so unique that regardless of the ex post facto analysis, the conclusion is the same. As will be discussed in this writing, the peculiar facts of this case leave Singh with no habeas relief.
¶ 141. As the old adage warns, "bad facts make bad law." This case is a prime example of bad facts, and I am concerned that by undertaking an unnecessary review of the scope of the ex post facto clause we risk creating bad law. Fortunately, we do not need to do so here. I write to explain that under either interpretation of the proper scope of the ex post facto clause proffered by the other members of the court, the result in this unusual case remains the same. Put simply, Singh is due no relief on his writ of habeas corpus. Judicial restraint requires that we resolve cases on the narrowest possible grounds. See, e.g., DOJ v. DWD, 2015 WI 114, ¶ 29, 365 Wis. 2d 694, 875 N.W.2d 545 ("[W]e are generally obliged to decide our cases on the 'narrowest possible grounds'" (quoting State v. Subdiaz-Osorio, 2014 WI 87, ¶ 143, 357 Wis. 2d 41, 849 N.W.2d 748 (Ziegler, J., concurring).)). Accordingly, a decision on the precise scope of the ex post facto *183 clause is unnecessary because Singh is entitled to no habeas corpus relief. Consequently, remand is also inappropriate in this case.
I. BACKGROUND
¶ 142. Singh committed an array of offenses between 2008 and 2011, a period of time during which a series of legislative changes to the sentencing statutes was enacted. For example, as of June 30, 2009, the legislature put into effect several early release opportunities for offenders who received sentences for certain eligible offenses after December 1, 1999. See 2009 Wis. Act 28.[2] The program at issue here provided that inmates serving prison sentences for misdemeanors or nonviolent Class F to Class I felonies could earn one day of "Positive Adjustment Time" (PAT) for every two days served "that he or she does not violate any *184 regulation of the prison or does not refuse or neglect to perform required or assigned duties." Wis. Stat. § 302.113(2)(b) (2009-10).[3] PAT did not decrease the total length of the sentence, but rather allowed inmates to convert one-third of their confinement time into extended supervision time.[4] Wis. Stat. § 302.113(3)(e) ("If an inmate is released to extended supervision under sub. (2)(b) after he or she has served less than his or her entire confinement in prison portion of the sentence imposed under s. 973.01, the term of extended supervision is increased so that the total length of the bifurcated sentence does not change."); § 302.113(2)(a) ("[A]n inmate subject to this section is entitled to release to extended supervision after he or she has served the term of confinement in prison portion of the sentence [as modified by the appropriate reviewing entity under the PAT statutes]" (emphasis added).).
¶ 143. An inmate's eligibility for PAT was not discretionary on the part of the Department of Corrections ("DOC"), but instead was dependent on the classification of the inmate's offense. See Wis. Stat. § 302.113(2)(b) ("An inmate sentenced under s. 973.01 for a misdemeanor or for a Class F to Class I felony that is not a violent offense, . . . may earn one day of positive adjustment time for every 2 days served that *185 he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties.") The statutes required the DOC to keep a record of the conduct of each inmate subject to § 302.113. See § 302.113(3)(a). Qualifying inmates were entitled to early release to extended supervision when they had served the confinement portion of their sentences less PAT earned. See § 302.113(2)(b) ("An inmate convicted of a misdemeanor or a Class F to Class I felony that is not a violent offense, . . . shall be released to extended supervision when he or she has served the term of confinement in prison portion of his or her bifurcated sentence,. . . less positive adjustment time he or she has earned."). When an inmate was within 90 days of release to extended supervision based upon PAT earned, the DOC notified the sentencing court that it intended to modify the inmate's sentence. § 302.113(2)(c)l. The sentencing court could, but was not required to, hold a review hearing. Id. ("[T]he [DOC] shall notify the sentencing court. . . and the court may hold a review hearing.") If the sentencing court did not schedule a hearing, the DOC proceeded with release. Id. ("If the court does not schedule a review hearing within 30 days after notification under this subsection, the [DOC] may proceed under par. (b).")
¶ 144. In 2008, prior to the enactment of the PAT statutes, Singh forged prescriptions for narcotics and was charged in Waukesha County with violating Wis. Stat. § 961.43(a), Obtain Controlled Substance by Fraud, a class H felony. Singh was convicted and sentenced for the 2008 Waukesha County offense in 2010, while PAT was in effect. He received three years probation with six months of conditional jail time and an imposed-and-stayed bifurcated prison sentence con *186 sisting of 18 months confinement and 18 months extended supervision, to be served upon revocation. Because he was sentenced for a qualifying offense after December 1, 1999, at the time of sentencing PAT at least arguably applied to the bifurcated prison portion of this sentence.[5]
¶ 145. While on probation for the 2008 Wauke-sha offense, Singh committed two offenses in Milwaukee County. The first was committed on July 25, 2011, while PAT was in effect. The PAT statutes were repealed August 3, 2011. Singh committed his second Milwaukee County offense on August 10, 2011, seven days after PAT's repeal. Singh pled guilty to one count of Obtain Controlled Substance by Fraud[6] for the July 25 offense, and to one count of Obtain Controlled Substance by Fraud for the August 10 offense.
¶ 146. On December 13, 2011, Singh's probation for the Waukesha offense was revoked and his stayed sentence of imprisonment (consisting of 18 months confinement plus 18 months extended supervision) was imposed. He was returned to jail to await sentencing on the Milwaukee County offenses.
¶ 147. On December 29, 2011, Singh was sentenced for the Milwaukee County offenses. For the *187 July 2011 Milwaukee offense, he was sentenced to 24 months initial confinement and 36 months extended supervision, to be served consecutively to the Wauke-sha sentence.[7] For the August 2011 Milwaukee offense, he was sentenced to 24 months initial confinement and 36 months extended supervision, to run concurrently to all other sentences. In other words, the August 2011 Milwaukee sentence was concurrent to both the Waukesha sentence (18 months confinement and 18 months extended supervision) as well as the July 2011 Milwaukee sentence (24 months confinement and 36 months extended supervision). Singh's first day in prison was January 4, 2012.[8]
¶ 148. Singh filed a petition for positive adjustment time on the Waukesha case with the Racine Correctional Institution.[9] When the DOC refused to process his request, Singh filed a petition for a writ of habeas corpus in the Racine County circuit court on June 28, 2013, alleging he was also due PAT on the July 2011 Milwaukee sentence.[10] The DOC filed a motion to quash the writ, which the circuit court *188 granted. The court of appeals reversed in part and affirmed in part, finding that the ex post facto clause required the DOC to allow Singh to earn PAT credit toward his sentences for both his Waukesha and July 2011 Milwaukee offenses. This appeal followed.
¶ 149. While the appeal was pending before this court, Singh was released to extended supervision.[11] On July 14, 2015, the Waukesha County circuit court modified Singh's sentence to one year in jail with credit for time served and vacated the extended supervision portion of the sentence.[12]
¶ 150. Consequently, we find the case before us in the following posture: Singh's sentence in the Waukesha case is now one year in jail and has been served. The initial Waukesha bifurcated sentence of imprisonment — 18 months confinement and 18 months extended supervision — no longer exists. As for the two Milwaukee concurrent sentences, Singh has served 29 months of confinement and is currently on extended supervision for both the July 2011 and Au *189 gust 2011 Milwaukee offenses. According to the information the DOC is representing to the world at large, Singh's maximum discharge date is now November 28, 2016.[13]
¶ 151. Nonetheless, I proceed to discuss this case in terms of the sentences that existed when Singh filed his writ of habeas corpus and at a time when the Waukesha sentence had not been modified so as to moot its consideration of PAT credit. I then will discuss the fact that habeas relief is unavailable to Singh considering the facts as they now exist.
II. DISCUSSION
A. The Ex Post Facto Clauses
¶ 152. As a general proposition, the ex post facto clause requires fundamental fairness and that individuals have fair notice of the consequences of their crimes. Both the United States Constitution and the Wisconsin Constitution have ex post facto clauses.[14] We follow United States Supreme Court precedent that interprets the federal constitution's prohibition of ex post facto laws when interpreting the Wisconsin Constitution's ex post facto clause. State v. Thiel, 188 Wis. 2d 695, 699, 524 N.W.2d 641 (1994).
¶ 153. The Supreme Court of the United States has stated that the purpose of the ex post facto clause is to ensure "that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." Weaver v. Graham, *190 450 U.S. 24, 28-29 (1981). It is also meant to protect fundamental fairness by making the government "abide by the rules of law it establishes," Carmell v. Texas, 529 U.S. 513, 532 (2000), and to "restrict governmental power by restraining arbitrary and potentially vindictive legislation." Weaver, 450 U.S. at 29.
¶ 154. Though the Supreme Court has "declined to articulate a single 'formula' for identifying those legislative changes that have a sufficient effect on substantive crimes or punishments to fall within the constitutional prohibition," California Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995), the formulation "faithful to our best knowledge of the original understanding of the Ex Post Facto Clause" is that stated in Beazell v. Ohio, 269 U.S. 167, 169-70 (1925):
It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.
Collins v. Youngblood, 497 U.S. 37, 42-43 (1990). Following the lead of the Supreme Court of the United States, this court in Thiel adopted verbatim the Bea-zell formulation of ex post facto laws. Thiel, 188 Wis. 2d at 703.
¶ 155. Consequently, the ex post facto clause prohibits only those laws that fall into one of the Beazell categories. The fact that the legislature changes a sentencing statute does not automatically entitle a defendant to relief pursuant to the ex post facto clause. Rather, the ex post facto clause provides *191 that "[¡legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins, 497 U.S. at 43.
¶ 156. It is the question of whether the repeal of PAT "increased the punishment" for Singh's 2008 Waukesha crime that has divided this court. Some members of this court conclude that the ex post facto clause prohibits the legislature from making the punishment for an offense more burdensome than it was at the time of commission, conviction, or sentencing for an offense. They conclude that because Singh was sentenced in 2010 to bifurcated sentences that included the opportunity to earn PAT, repeal of PAT retroactively increases the punishment Singh received for that offense and is thus an ex post facto law. Other members of this court contend that the ex post facto clause requires only that the punishment for an offense not be made more burdensome than it was on the day the offense was committed. They conclude that because PAT was not the law in 2008 when Singh committed his Waukesha crime, the retroactive repeal of PAT does not increase Singh's punishment for that offense.
¶ 157. I write to explain that under either articulation of the proper scope of the ex post facto clause, in this case, Singh spent five more months in confinement than he should have due to PAT's retroactive repeal. Thus, as will be demonstrated below, regardless of whether the ex post facto inquiry compares a new law to the law in effect (1) at the time of commission, conviction, or sentencing, or (2) to the law in effect on only the date of the commission of the offense, retroactive repeal of PAT increased Singh's *192 punishment for an offense already committed in doing so and violated the ex post facto clause.[15]
1. PAT for both the 2008 Waukesha and July 2011 Milwaukee Sentences
¶ 158. If the ex post facto clause requires Singh to earn PAT on both the original Waukesha bifurcated prison sentence and the July 2011 Milwaukee prison sentence, Singh should have been released to extended supervision on January 4, 2014.[16] He was released from confinement five months later. I will explain why this is so.
¶ 159. Singh's original sentence for the Wauke-sha offense consisted of 18 months confinement and 18 months extended supervision. A full grant of PAT on that sentence (one-third of 18 months, so 6 months) would change that sentence to 12 months (18 - 6 = 12) confinement and 24 months extended supervision (18 + 6 = 24). The 6 months of PAT credit against confinement prolongs the extended supervision by that same amount so not to change the overall length of the sentence. See Wis. Stat. § 302.113(3)(e).
*193 ¶ 160. The consecutive July 2011 Milwaukee sentence consisted of 24 months confinement and 36 months extended supervision. A full grant of PAT on that sentence (one-third of 24 months, so 8 months) would change that sentence to 16 months confinement (24 - 8 = 16) and 44 months extended supervision (36 + 8 = 44).
¶ 161. Singh was otherwise also due approximately 13 months (393 days) of jail credit to the confinement portion of his sentence for time otherwise spent in custody for the Waukesha and July 2011 Milwaukee offenses. This would further affect the sentences so to then require essentially 15 total months of confinement because the Waukesha sentence of 12 months is less than the 13 months credit due, and the remaining July sentence of 16 months would receive the remaining one month of credit in order to give him full credit for the time spent in custody.[17] As was demonstrated above, he would still have 44 months extended supervision, but that part of the sentence would begin only after all confinement was served.
¶ 162. So, assuming he was due PAT for the Waukesha and July 2011 Milwaukee sentences, Singh should have served 15 months confinement (the Waukesha sentence usurped by the credit due plus 15 months (16 - 1 = 15) for the July 2011 Milwaukee sentence). Singh's first day in prison on this sentence was January 4, 2012. If Singh was entitled to a full grant of PAT on both sentences, the confinement term *194 of this sentence should have ended March 4, 2013 — 15 months from January 4, 2012.
¶ 163. However, Singh would not have been released March 4, 2013, because Singh was also serving the concurrent August 2011 Milwaukee sentence of 24 months confinement and 36 months extended supervision at this time (concurrent to both the above Wauke-sha sentence and July 2011 Milwaukee sentence). It is undisputed that for the August 2011 Milwaukee offense, Singh was due neither PAT nor jail credit under the statute. The August 2011 Milwaukee sentence also began on January 4, 2012, because it was concurrent to all other sentences (including the Waukesha sentence which came first and began on January 4, 2012). The confinement term on this August 2011 Milwaukee sentence would have thus ended January 4, 2014 — 24 months from January 4, 2012. As a result, while this concurrent sentence would be the reason for keeping Singh in confinement until January 4, 2014, it could not be the reason for keeping Singh in confinement another five months, as he was, until June 2, 2014.
¶ 164. Consequently, if the ex post facto clause looks to the law at the time of commission, conviction, or sentencing (as some of my colleagues would conclude), and Singh was due PAT on both the Waukesha sentence and the July 2011 Milwaukee sentence, he should have been released to extended supervision on January 4, 2014, not June 2, 2014. Because the DOC refused to process Singh's PAT request and no court hearing was held, he thus served a full 29 months of confinement (18 - 13 + 24 = 29). He was released June 2, 2014 — 29 months from the day his sentences began on January 4, 2012.
¶ 165. The only way to conclude that Singh should have spent 29 months in confinement would be *195 to surmise that he was due no PAT credit on either sentence. Only one of my colleagues would so decide that is the case. Indeed, it is difficult to conclude that he would not be due PAT on at least the July 2011 Milwaukee sentence given the fact that PAT was the law in place on the date of commission of that offense.[18]
¶ 166. However, as I have otherwise discussed in this section, if the ex post facto inquiry compares a new law to the law in effect at the time of commission, conviction, or sentencing for an offense, PAT's repeal unconstitutionally increased the punishment for Singh's Waukesha and July 2011 Milwaukee offenses and caused him to serve an extra five months confinement. He was released June 2, 2014, and PAT combined with the concurrent August 2011 Milwaukee sentence would have allowed him to be released five months earlier on January 4, 2014, even with consideration of the concurrent August 2011 Milwaukee case.
2. PAT For Only the July 2011 Milwaukee Sentence
¶ 167. It seems that all but one of my colleagues could agree that Singh is at least due PAT for the July 2011 Milwaukee sentence which ran consecutive to the earlier Waukesha sentence. Even under this narrower interpretation of the ex post facto clause — comparing a new law only to the law that existed on the date of *196 commission of the offense — PAT's repeal still caused Singh to spend an additional five months in prison. Even according to the narrowest view of the ex post facto inquiry being put forth by members of this court, Singh should have earned PAT on the July 2011 Milwaukee sentence. I will now demonstrate how even under this narrower interpretation, PAT's repeal unconstitutionally required Singh to serve five extra months confinement in prison.
¶ 168. Singh's original sentence for the Wauke-sha offense consisted of 18 months confinement and 18 months extended supervision. If no PAT was due on this sentence, it remains as-is.
¶ 169. The July 2011 Milwaukee sentence consisted of 24 months confinement and 36 months extended supervision and was consecutive to the Wauke-sha case. A full grant of PAT on that sentence alone (one-third of 24 months, so 8 months) would change that sentence to 16 months confinement (24 - 8 = 16) and 44 months (36 + 8 = 44) extended supervision.
¶ 170. As has been discussed, Singh was also otherwise due approximately 13 months jail credit on the confinement portion of his sentence. After all confinement is served, he would then begin his 44 months of extended supervision (the concurrent August 2011 sentence of 36 months extended supervision would conclude within this 44 months).
¶ 171. So, if Singh was due PAT for only the July 2011 Milwaukee sentence, Singh should have served 21 months confinement (18 months for the Waukesha sentence, minus 13 months for sentence credit due, plus 16 months for the July 2011 Milwaukee sentence) (18 - 13 + 16 = 21). Singh's first day in prison on the consecutive sentences was January 4, 2012. If Singh was entitled to PAT on only the July 2011 Milwaukee *197 sentence, the confinement term of his consecutive sentences should have ended October 4, 2013 — 21 months from January 4, 2012. Below, I will explain why it did not.
¶ 172. Recall, Singh was also serving the concurrent August 2011 Milwaukee sentence of 24 months confinement and 36 months extended supervision at this time. Singh was due no PAT or jail credit for the August 2011 Milwaukee offense. The August 2011 Milwaukee sentence also began on January 4, 2012. The confinement term on this August 2011 Milwaukee sentence (24 months concurrent, for which all agree no PAT is due) would have nonetheless kept Singh incarcerated until January 4, 2014 — 24 months from January 4, 2012.
¶ 173. Consequently, even if the ex post facto clause looks only to the law on the date of commission of the offense and Singh was due PAT only on the July 2011 Milwaukee sentence, Singh still should have been released to extended supervision on January 4, 2014. On that date, he would have completely served his terms of confinement on all three sentences. Because the DOC refused to process Singh's PAT request, he served a full 29 months confinement (18 months for the Waukesha sentence, minus 13 months for sentence credit, plus 24 months for the July 2011 Milwaukee sentence, equals 29 months confinement).
¶ 174. He was released June 2, 2014 — 29 months from the day his sentences began on January 4, 2012. Only one of my colleagues asserts that he could never be due PAT for any of the sentences, and thus release on June 2, 2014 (29 months confinement) according to her, is the appropriate term of confinement. The other six members of this court could conclude, however, that Singh is at least due PAT for the July 2011 Milwaukee *198 sentence. Thus, under the facts of this case, all but one justice should agree that Singh should have been required to be released January 4, 2014, as there is no sentence that would have required him to be confined longer.
¶ 175. Even though it seems apparent that Singh should have been released five months earlier, regardless of whether the ex post facto clause analysis is as stated in section II.A.1., or it is as stated in section II.A.2, the bottom line is that under either analysis, PAT's repeal unconstitutionally increased Singh's punishment by five months confinement in prison. Under the particular facts of this case, Singh however finds himself in the unique position of being entitled to no relief under his petition for habeas corpus. As I will explain below, even if habeas relief may have been appropriate in the past, the writ is not now available to Singh.
B. Habeas Corpus
¶ 176. Habeas corpus is a civil proceeding with origins in the common law, and its availability is guaranteed by the Wisconsin and United States constitutions.[19] State ex rel. Haas v. McReynolds, 2002 WI 43, ¶ 11, 252 Wis. 2d 133, 643 N.W.2d 771. It is an equitable remedy that is available to a prisoner "when there is a pressing need for relief or where the process or judgment by which a petitioner is held is void." Id. (citation omitted). "The writ of habeas corpus is a procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny. Where it is available, it assures among other things that a prisoner may require his jailer to justify the detention *199 under the law." Peyton v. Rowe, 391 U.S. 54, 58 (1968). The purpose of the writ "is to protect and vindicate the petitioner's right of personal liberty by releasing the petitioner from illegal restraint." State ex rel. Hager v. Marten, 226 Wis. 2d 687, 692, 594 N.W.2d 791 (1999).
¶ 177. "Because it is an extraordinary writ, ha-beas corpus relief is available only where the petitioner demonstrates: (1) a restraint of his or her liberty, (2) which restraint was imposed contrary to constitutional protections or by a body lacking jurisdiction and (3) no other adequate remedy available at law." State v. Pozo, 2002 WI App 279, ¶ 8, 258 Wis. 2d 796, 654 N.W.2d 12 (citation omitted). Importantly, "a writ will not be issued where the 'petitioner has an otherwise adequate remedy that he or she may exercise to obtain the same relief.' " Id. (citation omitted).
¶ 178. With these principles in mind and regardless of whether the principle of fair notice allows either the ex post facto inquiry to (1) compare a new law to the law at the time of commission, conviction, or sentencing for an offense, or (2) compare a new law to the law in effect only at the time of commission of the offense, I conclude that Singh is not entitled to any relief in his petition for habeas corpus.
f 179. In Singh's petition for a writ of habeas corpus, he stated that he was serving a consecutive sentence composed of 18 months initial confinement and 18 months extended supervision for the Waukesha case, and 24 months initial confinement and 36 months extended supervision for the July 2011 Milwaukee case.[20] He contended that denying PAT to inmates who had committed offenses prior to PAT's *200 August 3, 2011 repeal was an ex post facto violation pursuant to the decisions of the Supreme Court of the United States in Weaver v. Graham, 450 U.S. 24 (1981), and Miller v. Florida, 482 U.S. 423 (1987). Consequently, he alleged, he was eligible to earn PAT and had earned sufficient PAT on these two sentences so to entitle him to release, thus his continuing detention was illegal. See State ex rel. Goodchild v. Burke, 27 Wis. 2d 244, 251, 133 N.W.2d 753 (1965) (holding that Goodchild's claims of constitutional error that would invalidate his murder conviction could be reviewed by habeas corpus even though he could not be discharged from custody due to a concurrent burglary sentence). As will be demonstrated next, even though there was a violation of the ex post facto clause, Singh is not entitled to relief by way of his habeas petition.
¶ 180. First, Singh's Waukesha sentence has since been reduced to one year in jail. Contrary to the suggestion of the lead opinion in footnote 7, the plain language of the statutes is very clear that PAT is earned only on a prison sentence — it cannot be earned on a jail sentence. See Wis. Stat. § 302.113(1) (2009-10) ("An inmate is subject to this section if he or she is serving a bifurcated sentence imposed under s. 973.01."). Wisconsin Stat. § 973.01 is the sentencing statute for prison sentences.[21] While it once was, Singh's Waukesha sentence is no longer a prison sentence. He is entitled to no habeas relief on this sentence because he could not be entitled to PAT for a *201 jail sentence.[22] He cannot be due habeas relief for being denied something for which he does not qualify. See State ex rel. Wohlfahrt v. Bodette, 95 Wis. 2d 130, 132, 289 N.W.2d 366 (Ct. App. 1980) ("[T]he extent of an equitable remedy is limited only by the effect of the constitutional violation" (citation omitted).)
¶ 181. Second, even if Singh were granted all of the relief requested in his petition for habeas corpus, he would have a longer, not shorter, term of extended supervision to serve.[23] Nonetheless, the record reflects that his extended supervision terms have now been reduced by six months, as a publicly-available website reflects that Singh's maximum release date is now November 28, 2016.[24] Once again, he finds himself in a better, and not worse, position with an earlier release date than had he received PAT and his confinement time was converted to extended supervision.
¶ 182. Third, his current status as an offender on extended supervision is indeed a legally-imposed status such that he could not be entitled to habeas relief. It is the sentence imposed by the sentencing judge that authorizes — legally—the custody of the defendant.[25] See Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006). *202 Consequently, the current restraint on Singh's liberty is not "imposed contrary to constitutional protections" as would be required for Singh to be entitled to a writ of habeas corpus. In other words, he is currently on extended supervision and should be.
¶ 183. Fourth, if somehow further relief is due Singh, because he would have other remedies at law, he is not due any relief by a writ of habeas corpus.[26] Habeas relief is not due to one who has other adequate remedies at law. To the extent that further relief is warranted, Singh indeed has other adequate remedies at his disposal. For example, Singh can petition the DOC for application of any extra time he may have spent in confinement toward any confinement he will serve if his extended supervision is revoked; he can seek sentence credit under Wis. Stat. § 973.155; or he can bring a civil suit for monetary damages, if due. Because this is so, Singh's relief does not come by way of a writ of habeas corpus. See Haas, 252 Wis. 2d 133, ¶ 14 ("We have long and consistently held that the extraordinary writ of habeas corpus is not available to a petitioner when the petitioner has other adequate remedies available" (citations omitted).).
¶ 184. For the above stated reasons, I agree only with the lead opinion's conclusion to affirm in part and reverse in part the court of appeals. The opinion of Justice Ann Walsh Bradley is joined only by Justice Shirley S. Abrahamson. Justice David T. Prosser concurs, but does not join Justice Ann Walsh Bradley's *203 opinion.[27] While Justice Prosser engages in a thorough, reasonable, and persuasive analysis concerning Singh's ex post facto challenge, the facts of this case are so unique that regardless of the ex post facto analysis, the conclusion is the same. As discussed in this writing, the peculiar facts of this case leave Singh with no habeas relief.
¶ 185. As the old adage warns, "bad facts make bad law." This case is a prime example of bad facts, and I am concerned that by undertaking an unnecessary review of the scope of the ex post facto clause we risk creating bad law. Fortunately, we do not need to do so here. As explained, under either interpretation of the proper scope of the ex post facto clause proffered by the members of the court, the result in this unusual case remains the same. Put simply, Singh is due no relief on his writ of habeas corpus. Judicial restraint requires that we resolve cases on the narrowest possible grounds. See, e.g., DOJ v. DWD, 365 Wis. 2d 694, ¶ 29 ("[W]e are generally obliged to decide our cases on the 'narrowest possible grounds'" (quoting Subdiaz-Osorio, 357 Wis. 2d 41, ¶ 143 (Ziegler, J., concurring).)). Accordingly, a decision on the precise scope of the ex post facto clause is unnecessary because Singh is entitled to no habeas corpus relief. Consequently remand is inappropriate in this case.
¶ 186. For the foregoing reasons, I respectfully concur in part and dissent in part.
¶ 187. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this opinion.

 Chief Justice Roggensack and Justice Rebecca G. Bradley have authored separate but dissenting opinions.

 Creating Wis. Stat. 302.113 (2009-10), which provided in relevant part:
(1) An inmate is subject to this section if he or she is serving a bifurcated sentence imposed under s. 973.01. An inmate convicted of a misdemeanor or of a Class F to Class I felony that is not a violent offense,. . . and who is eligible for positive adjustment time under sub. (2)(b). . . may be released to extended supervision under sub. (2)(b) or (9h). . . .
(2) ...
(b) An inmate sentenced under s. 973.01 for a misdemeanor or a Class F to Class I felony that is not a violent offense, as defined in s. 301.048(2)(bm)l., may earn one day of positive adjustment time for every 2 days served that he or she does not violate any regulation of the prison or does not refuse or neglect to perform required or assigned duties. An inmate convicted of a misdemeanor or a Class F to Class I felony that is not a violent offense,.. . shall be released to extended supervision when he or she has served the term of confinement in prison portion of his or her bifurcated sentence,.. . less positive adjustment time he or she has earned.

 All subsequent references to the Wisconsin Statutes will be to the 2009-10 version of the Wisconsin Statutes unless otherwise indicated.

 For instance, if an inmate received a bifurcated sentence consisting of three years confinement and three years extended supervision, PAT would allow the sentence to be modified to two years confinement and four years extended supervision. The inmate would be released to extended supervision after serving two years confinement in prison.

 Singh did not earn any PAT on this sentence at this time, however, because he was placed on probation and his bifurcated prison sentence was imposed and stayed. Thus, until his probation was revoked, Singh was not "serving a bifurcated sentence imposed under s. 973.01" as required by Wis. Stat. § 302.113. See Wis. Stat. § 302.113(1).

 Singh also pled guilty to one count of Obtain Prescription Drug with Fraud in this case. This is an unclassified misdemeanor. See Wis. Stat. § 450.11(7)(a) (2011-12). For this count, he was sentenced to six months in a house of correction, to run concurrently with all sentences. Because this sentence is irrelevant to the issue at hand, I will not discuss it further.

 When consecutive sentences are imposed, they are computed as one continuous sentence. Wis. Stat. § 302.113(4). A person serves all terms of confinement before serving any terms of extended supervision. Id.

 He received 159 days of credit for the conditional jail time served on the Waukesha sentence, as well as 234 days of confinement time credit for days he spent in jail awaiting hearings and awaiting transfer to the prison. This amounted to a total of 13 months confinement credit toward the Waukesha and July 2011 Milwaukee sentences, which he in fact received.

 Singh has filed numerous motions with various entities related to his convictions. I will only discuss those necessary to the disposition of this case.

 After his arrival in prison, Singh filed a petition for positive adjustment time on the Waukesha sentence. It is unclear from the record exactly what date this petition was *188 filed. On May 2,2012, the DOC sent a letter to the circuit court explaining that it refused to verify Singh's eligibility for PAT. Singh's June 2013 petition for a writ of habeas corpus was based upon the DOC's refusal to process his PAT eligibility petition upon his arrival in prison.

 Because Singh's jail credit amounted to 13.1 months and he received no PAT on either sentence, his release-to-extended-supervision date for the consecutive 18-month Waukesha and 24-month July 2011 Milwaukee confinement terms was June 2, 2014 (18 months minus 13 months, plus 24 months, for a total of 29 months from January 4, 2012: June 4, 2014).

 The amendment to the Waukesha sentence was not revealed to this court until oral argument. The details of the amended sentence in Waukesha County Case No. 2008CF1368 are available on CCAP (the Consolidated Court Automation Program case management system). Available at https ://wcca/wicourts .gov/index.xsl.

 This date was obtained using the DOC's Offender Locator search, available at http://offender.doc.state.wi.us/lop/home.do

 See U.S. Const. art. I, §§ 9 and 10; Wis. Const, art. I, §12.

 While I recognize that the Waukesha sentence would no longer qualify for PAT because it is a jail sentence, I analyze these sentences in terms of how they existed at the time he filed his request for PAT.

 I recognize that the DOC uses certain procedures for calculating release dates and that consequently, an inmate's actual release date does not always correspond exactly to the date upon which the average person would consider that a "month" has passed on the calendar. See, e.g., Wis. Stat. § 302.113(8) ("Releases to extended supervision from prison shall be on the Tuesday or Wednesday preceding the date on which he or she completes the term of imprisonment."). Though small discrepancies in the exact day Singh would have been released in the scenarios given here may exist, they do not impact my analysis.

 When two consecutive sentences are imposed, jail credit for custody that is connected to both sentences reduces the term of confinement of the "first" sentence to be served. See State v. Boettcher, 144 Wis. 2d 86, 100, 423 N.W.2d 533 (1988).

 The law in effect on July 25, 2011, when Singh committed the offense, required Singh to serve 16 months confinement in prison on the sentence he received for that offense. The law in effect after PAT's repeal on August 3, 2011, required Singh to serve 24 months confinement in prison on the sentence he received for the same offense. This is an increase in punishment for the July 25, 2011 Milwaukee offense that took effect after July 25,2011. Under any reading of Beazell and Thiel, the ex post facto clause prohibits this.

 U.S. Const. art. I, § 9, cl. 2; Wis. Const. art. I, § 8, cl. 2.

 Singh's petition made no mention of the August 2011 Milwaukee concurrent sentence.

 "[WJhenever a court sentences a person to imprisonment in the Wisconsin state prisons for a felony committed on or after December 31, 1999, or a misdemeanor committed on or after February 1, 2003, the court shall impose a bifurcated sentence under this section." Wis. Stat. § 973.01(1).

 The record is not clear as to why the Waukesha sentence was amended, but it is clear that Singh is in a better position now because he no longer has any extended supervision in that case, he could not be returned to prison on that sentence, and he received a result better than could have been given had he received the requested relief in his habeas petition.

 Recall from sections II.A. 1. and H.A.2., had he received all of the relief requested in his habeas petition, he would have at least 44 months extended supervision to serve.

 Presumably, his release date has been backdated to reflect the change in the Waukesha sentence.

 Assuming, of course, that the sentencing court considers the appropriate factors and imposes a sentence within the *202 statutorily authorized range. See, e.g., State v. Gallion, 2004 WI 42, ¶ 43, 270 Wis. 2d 535, 678 N.W.2d 197.

 I am not opining as to whether Singh may have other civil remedies to pursue.

 Chief Justice Roggensack and Justice Rebecca G. Bradley have authored separate but dissenting opinions.